**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 5, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

CHRISTOPHER LAROY GAITER,

    Defendant - Appellant.

No. 23-8037
(D.C. No. 2:22-CR-00115-ABJ-1)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **BALDOCK**, and **MORITZ**, Circuit Judges.
_____

Christopher Gaiter entered a conditional guilty plea to possessing a firearm in violation of 18 U.S.C. § 922(g)(1). On appeal, Gaiter argues that the district court should have dismissed the indictment because § 922(g)(1) violates the Second Amendment under *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). He also contends that the district court should have suppressed statements and evidence obtained during a traffic stop because law enforcement unconstitutionally

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

questioned him before administering warnings under *Miranda v. Arizona*, 384 U.S. 436 (1966). But our precedent forecloses Gaiter's *Bruen* argument, and the district court correctly concluded that no *Miranda* violation occurred because Gaiter was not in custody at the time of questioning. We therefore affirm.

## Background[1]

Late one night in April 2022, law enforcement in Douglas, Wyoming, received a report of a drunk driver. The report described the vehicle as an orange Dodge Challenger last seen leaving a gas station and heading south on I-25. Less than 15 minutes later, about five minutes before midnight, Trooper Cody Smith spotted the vehicle heading south on I-25, traveling six miles per hour over the posted speed limit. Smith caught up to the vehicle and initiated a traffic stop.

Smith approached the vehicle and explained that he had stopped the driver—later identified as Gaiter—for speeding. According to Smith, Gaiter "appeared nervous, could not sit still, had dilated pupils, and was extremely fidgety." R. vol. 1, 317 (quoting *id.* at 159). Smith asked for Gaiter's license, the vehicle's registration, and proof of insurance, but Gaiter could not produce any of these documents; Gaiter explained that his license was suspended and that the vehicle was a rental. Smith requested to see the rental agreement, but Gaiter said he did not have it, adding that

---

[1] We take the facts from the district court's order denying Gaiter's motion to suppress, which in turn relied on the police report attached to his motion and the dashcam footage of the traffic stop. And we view these facts in the light most favorable to the district court's determination. *See United States v. Santos*, 403 F.3d 1120, 1124 (10th Cir. 2005).

"he was not the renter." *Id.* (quoting *id.* at 159). When Smith asked if Gaiter would check the vehicle's glove box for the rental agreement, Gaiter stared at the glove box for a while before stating that it was not inside. Smith then requested that Gaiter accompany him to the patrol vehicle so he "could ask [Gaiter] some additional questions on [Gaiter's] identification and the rental [vehicle]." *Id.* (quoting *id.* at 159). Gaiter agreed.

Gaiter entered the patrol vehicle and sat in the front passenger seat. In the vehicle, Smith verified Gaiter's identification, confirmed that his license was suspended, and learned that he was subject to a protection order. With Gaiter's permission, Smith then retrieved Gaiter's phone from the rental vehicle. And in so doing, Smith saw a bullet on the driver's seat.

When Smith returned to his patrol vehicle with the phone, Gaiter contacted J.P., the individual who had allegedly rented the Dodge Challenger. Smith remarked that Gaiter "appeared out of sorts" and asked if Gaiter had taken any medication or suffered any recent injuries. *Id.* at 159. Smith then announced that he intended to conduct field sobriety tests. Before exiting the vehicle, Smith mentioned the bullet he saw on the driver's seat of the rental vehicle. In response, Gaiter "stumbled initially" but then revealed that J.P. (who was still on the phone with Gaiter) had recently bought a firearm and that the firearm was in the rental vehicle's glove box. *Id.* at 318. Asked why he "seemed so twitchy," Gaiter said that he was just stressed and tired, noting that he was on his way to Cheyenne, Wyoming. *Id.* at 160. Smith and Gaiter

3

then exited the patrol vehicle, and Smith devoted about nine minutes to performing field sobriety tests. A deputy arrived on the scene as they were wrapping up.

After the field sobriety tests, Smith and Gaiter returned to the patrol vehicle. Smith explained that Gaiter passed the tests but that he nevertheless suspected Gaiter had recently used drugs. Smith asked if there was anything else in the rental vehicle he should know about, and Gaiter said no. Gaiter then disclosed that he had a felony conviction and locked the firearm in the glove box for that reason.

Smith asked dispatch to run a criminal-history check on Gaiter. Smith and Gaiter then briefly discussed Gaiter's travel plans, the purpose of the trip, and Gaiter's housing arrangements in Cheyenne. At 12:27 a.m., Smith instructed Gaiter to end the call with J.P., who had been on the phone for over 20 minutes, and secured Gaiter in the back seat of the patrol vehicle. Smith and the deputy on the scene then searched the rental vehicle, recovered the firearm from the glove box, and received confirmation from dispatch that Gaiter had a felony conviction. Smith later advised Gaiter of his *Miranda* rights, and Gaiter agreed to answer further questions but denied that anything in the vehicle belonged to him.

The government charged Gaiter with being a felon in possession of a firearm. Gaiter moved to dismiss the indictment, arguing that the felon-in-possession statute, 18 U.S.C. § 922(g)(1), is unconstitutional on its face and as applied to him under *Bruen*, which created a new test for assessing the scope of the Second Amendment right to possess firearms. *See* 597 U.S. at 24. The district court denied the motion, concluding that "§ 922(g)(1) remains intact post-*Bruen*." R. vol. 1, 291. Gaiter also

4

moved to suppress all evidence obtained and statements made during the traffic stop, asserting that Smith unconstitutionally prolonged the stop and questioned him without administering *Miranda* warnings. The district court denied that motion, too, determining that (1) Smith's "investigative detours . . . were justified by independent reasonable suspicion," and (2) Gaiter was not entitled to *Miranda* warnings at the time of questioning because he was not in custody until Smith secured him in the patrol vehicle's back seat. *Id.* at 325.

Gaiter ultimately entered a conditional guilty plea, and the district court sentenced him to 57 months in prison and three years of supervised release. Gaiter now appeals.

## Analysis

Gaiter challenges the district court's orders denying his motion to dismiss and his motion to suppress. We consider each challenge in turn.

## I.    Motion to Dismiss

Gaiter argues that the district court erred in denying his motion to dismiss the indictment because the felon-in-possession statute, § 922(g), violates the Second Amendment under *Bruen*. We review this issue de novo. *See United States v. Berres*, 777 F.3d 1083, 1087 (10th Cir. 2015) ("We review the constitutionality of a statute de novo."); *United States v. Wells*, 873 F.3d 1241, 1253 (10th Cir. 2017) (noting that legal issues "embedded" in denial of motion to dismiss indictment "are reviewed de novo").

Our precedent forecloses Gaiter's argument that § 922(g)(1) is

unconstitutional. We unanimously held in *United States v. McCane* that § 922(g)(1) does not violate the Second Amendment. 573 F.3d 1037, 1047 (10th Cir. 2009). In so holding, we emphasized that when the Supreme Court first announced that the Second Amendment creates personal rights, it "explicitly stated . . . that 'nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons.'" *Id.* (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)). Although *Bruen* later established a new test for assessing the scope of the Second Amendment right to possess firearms, *McCane* remains good law. Indeed, we recently held that "*Bruen* did not indisputably and pellucidly abrogate our precedential opinion in *McCane*." *Vincent v. Garland*, 80 F.4th 1197, 1202 (10th Cir. 2023). And "we are bound to follow" this precedent. *United States v. Swan*, 91 F.4th 1052, 1059 n.7 (10th Cir. 2024); *see also United States v. Lira-Ramirez*, 951 F.3d 1258, 1260–61 (10th Cir. 2020) ("We must generally follow our precedents absent en banc consideration.").

Even so, Gaiter suggests that our precedent leaves room for his as-applied challenge to § 922(g)(1) because neither *McCane* nor *Vincent* "consider[ed] every possible" felony underlying a § 922(g)(1) offense. Aplt. Br. 26. But as we explained in *Vincent*, *McCane* "upheld the constitutionality of the federal ban for *any* convicted felon's possession of a firearm" and thus provides "no basis to draw constitutional distinctions based on the type of felony involved." *Vincent*, 80 F.4th at 1202. Because our precedent forecloses not only Gaiter's facial challenge but also his as-applied one, the district court did not err in denying his motion to dismiss.

6

## II.    Motion to Suppress

Gaiter next challenges the denial of his motion to suppress, arguing that the district court erred in holding he was not in custody for *Miranda* purposes until placed in the patrol vehicle's back seat.[2] We review the district court's custody determination de novo. *United States v. Chee*, 514 F.3d 1106, 1112 (10th Cir. 2008). But "[w]e accept the district court's factual findings unless they are clearly erroneous and view the evidence in the light most favorable to the government." *Id.*

In *Miranda*, the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444. "Prior to questioning, the person being interrogated must be warned of his '*Miranda* rights,' including his right to remain silent." *Chee*, 514 F.3d at 1112. But *Miranda* warnings are not always required: they need only be given once an individual is both "in custody" and subject to "interrogation." *Id.* (quoting *United States v. Perdue*, 8 F.3d 1455, 1463 (10th Cir. 1993)).

Gaiter argues that he was in custody when Smith questioned him. An individual is in custody for *Miranda* purposes when a reasonable person in the individual's position would understand their situation as "the functional equivalent of

---

[2] Gaiter does not argue on appeal the district court erred in ruling that Smith had reasonable suspicion to extend the traffic stop.

formal arrest."[3] *United States v. Guillen*, 995 F.3d 1095, 1109 (10th Cir. 2021)

(quoting *United States v. Cortez*, 965 F.3d 827, 840 (10th Cir. 2020)). "This is an

objective, fact-intensive inquiry that focuses on the totality of the circumstances." *Id.*

Three factors guide that inquiry: (1) "whether the police made [the defendant] aware

that [the defendant] was free to refrain from answering questions[] or to otherwise

end the interview"; (2) whether the questioning took place in "a police-dominated

atmosphere"; and (3) "whether the nature and length of the officers' questioning was

accusatory or coercive." *Id.* (first alteration in original) (quoting *United States v.*

*Revels*, 510 F.3d 1269, 1275 (10th Cir. 2007)). Officers may "dominate the

encounter" by isolating the defendant in a "'nonpublic questioning room[],'"

appearing in overwhelming numbers, separating the defendant from family and

friends, displaying a weapon, or making physical contact. *Jones*, 523 F.3d at 1240

(quoting *United States v. Griffin*, 7 F.3d 1512, 1519 (10th Cir. 1993)). But generally,

---

[3] To the extent that Gaiter asserts *Miranda* comes into play whenever a reasonable person in the suspect's shoes would not have felt free to leave, he proceeds "under an outmoded standard of review." *United States v. Jones*, 523 F.3d 1235, 1242 n.2 (10th Cir. 2008) (quoting *United States v. Czichray*, 378 F.3d 822, 826 (8th Cir. 2004)). Under *Berkemer v. McArty*, 468 U.S. 420 (1984), "the [ultimate] question is *not* whether a reasonable person would believe he was not free to leave"—it is "whether such a person would believe he was in police custody of the degree associated with formal arrest." *Jones*, 523 F.3d at 1242 n.2 (quoting 2 Wayne R. LaFave et al., Criminal Procedure § 6.6(c) (3d ed. 2007)).

"investigatory detentions such as ordinary traffic stops . . . fall short of placing the detainee in custody." *Cortez*, 965 F.3d at 840.

Here, everyone agrees that the first factor weighs against the government. Indeed, Smith never told Gaiter that he could decline to answer questions. Nor did Smith inform Gaiter that he was free to leave. This failure to advise Gaiter that he was "at liberty to decline to answer questions or free to leave is a significant indication of a custodial detention." *Griffin*, 7 F.3d at 1518. "But it also is only one factor to consider." *Guillen*, 995 F.3d at 1109.

The second factor favors the government. Although the stop occurred late at night, it took place in public view on the side of an interstate highway. And when Gaiter accompanied Smith to the patrol vehicle to answer additional questions, Gaiter sat in the vehicle's front passenger seat with the doors unlocked. *See United States v. Lamy*, 521 F.3d 1257, 1264 (10th Cir. 2008) (noting that defendant's "position in the [front] passenger seat of the [patrol] vehicle suggests a lack of arrest"). Smith did not handcuff Gaiter or display a weapon, and he allowed Gaiter to remain on the phone with J.P. for over twenty minutes. Smith was also the only officer present for much of the encounter, and even after the deputy arrived on the scene, Smith did all the questioning. *Cf. United States v. Wagner*, 951 F.3d 1232, 1251 (10th Cir. 2020) (finding no police domination where six law-enforcement agents were present but

"only two interviewed" defendant). Thus, the questioning did not take place in a police-dominated atmosphere.

The third and final factor also favors the government. There is no evidence that Smith "threatened or aggressively questioned" Gaiter during the encounter. *Lamy*, 521 F.3d at 1264. On the contrary, the district court found that Smith "was exceedingly professional and cordial" throughout, and Gaiter does not suggest otherwise. R. vol. 1, 337; *see also United States v. Rogers*, 391 F.3d 1165, 1170–71 (10th Cir. 2004) (concluding that defendant was not in custody where "officers were courteous and non[]threatening"). Instead, Gaiter complains that the encounter lasted too long and that he "was subjected to repeated questions." Aplt. Br. 41. But Smith engaged with Smith for only 30 minutes, nine of which were devoted to the field sobriety tests. Such a short exchange does not suggest coercion. *See Chee*, 514 F.3d at 1114 (weighing "the duration of the interview (less than an hour)" in government's favor). And as the district court explained, given Gaiter's "inability to provide meaningful identifying information as to himself or the vehicle *and* the sheer volume of reasonable suspicion of criminal activity," the 30-minute duration "[wa]s reasonable and does not indicate badgering or excessive repetition of questions." R. vol. 1, 337.

In sum, the totality of the circumstances convinces us that Gaiter was not in custody for *Miranda* purposes before Smith secured him in the patrol vehicle's back seat. A reasonable person in Gaiter's position would not have understood their situation as one akin to formal arrest. *See Guillen*, 995 F.3d at 1109. Although Smith

failed to inform Gaiter that he could leave or refuse to answer questions, Smith did not question him in a police-dominated atmosphere or engage in coercive conduct. The district court thus properly denied Gaiter's motion to suppress.

## Conclusion

Because the district court did not err in denying Gaiter's motion to dismiss or his motion to suppress, we affirm.

Entered for the Court


Nancy L. Moritz
Circuit Judge