**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 30 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

KEVIN GLADE THOMSON, also
known as Kevin Thompson, also
known as Kevin Thomsom,

Defendant-Appellant.

No. 02-4224

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:00-CR-191-DAK)**

---

Wayne T. Dance, Assistant United States Attorney (Paul M. Warner, United
States Attorney; Diana Hagen, Assistant United States Attorney, with him on the
briefs), Salt Lake City, Utah, for Plaintiff-Appellee.

Scott Keith Wilson, Assistant Federal Public Defender (Steven B. Killpack,
Federal Public Defender, with him on the briefs), Salt Lake City, Utah, for
Defendant-Appellant.

---

Before **TACHA**, Chief Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**MURPHY**, Circuit Judge.

---

**MURPHY**, Circuit Judge.

## I. INTRODUCTION

Police Officer Joseph Cyr seized defendant Kevin Thomson's handgun from a nylon bag during an investigation concerning threats Thomson allegedly made to his co-workers. When Thomson was indicted for possession of a firearm following a domestic violence conviction, in violation of 18 U.S.C. § 922(g)(9), he filed a motion to suppress the handgun. The district court denied the suppression motion, relying on the community caretaker exception to the Fourth Amendment warrant requirement. Thomson entered into a plea agreement with the government, but reserved his right to appeal the district court's denial of his motion to suppress. *See* Fed. R. Crim. P. 11(a)(2). Thomson appeals and this court exercises jurisdiction pursuant to 28 U.S.C. § 1291. This court **affirms** the district court's denial of the motion to suppress, but on different grounds than those relied on below.

## II. BACKGROUND

Officer Cyr responded to a report that Thomson had made threatening remarks to his co-workers at Alcatel, a business located in Salt Lake City, Utah. The employees of Alcatel had locked themselves in the ground level office. Officer Cyr located the ground level office and he was allowed to enter after identifying himself. He interviewed the manager, Mr. Panza, and two witnesses.

Panza informed Cyr that Thomson had been terminated a few days earlier but had remained in the building for two-and-one-half days. Panza further indicated Thomson was on the fifth floor where he was purportedly cleaning out his office. Panza informed the officer that Thomson had a history of drug abuse and was known to carry a handgun. Officer Cyr next spoke with one of the witnesses, Mr. Hutchinson, who informed him that earlier in the day he had heard Thomson say the words "fire storm" and "this place is going to burn." Hutchinson also informed Cyr that a few weeks earlier he had a phone conversation with Thomson during which Thomson said to Hutchinson, that the conversation was "just between you and me. If you tell anyone else, I'll kill you." In addition, Hutchinson told Cyr that Thomson carried a gun in a green canvas bag.

The other witness, Mr. Stott, told Cyr about an incident in Thomson's office. Stott had noticed a large bullet on Thomson's desk and asked, "[w]hat is that for?" According to Stott, Thomson replied, "[i]t's for all you mother F'ers. You're all the same." Officer Cyr also noted that all of the employees appeared to be frightened.

At some point during Officer Cyr's interview of the employees, Officer Hill arrived. The two policemen went to the fifth floor and found Thomson sitting at the desk in his office. Cyr asked Thomson to place his hands on his desk and Thomson complied. Cyr asked Thomson if he had any weapons on his person,

-3-

and Thomson replied that he did not. Cyr patted Thomson down and asked if he had weapons nearby. Thomson indicated that there was a weapon in a green canvas bag on the floor next to him. Cyr took the bag and carried it over to the other side of the desk away from Thomson. Cyr opened the bag and immediately found a handgun and three magazines of ammunition.

Cyr seized the weapon and took it to the police station as evidence. Cyr then spoke with a detective who assisted him in determining that he had probable cause to arrest Thomson for assault. Officer Cyr then returned to Alcatel and took Thomson into custody. Thompson was charged by state authorities with aggravated assault and carrying a concealed weapon. He later pleaded guilty to a federal charge of violating 18 U.S.C. § 922(g)(9), possessing a firearm following a domestic violence conviction. Under the plea agreement, however, Thomson retained his right to appeal the district court's denial of his motion to suppress.

## III. DISCUSSION

### A. The Initial Seizure of the Handgun

When reviewing a district court's denial of a motion to suppress, we accept the factual findings unless they are clearly erroneous and consider the evidence in a light most favorable to the government. *United States v. Elliott*, 107 F.3d 810, 813 (10th Cir. 1997). We review *de novo* the district court's legal conclusion concerning whether a Fourth Amendment violation occurred. *Id*.

The district court denied the motion to suppress because it concluded that Officer Cyr's opening of the bag and temporary seizure of the weapon were permissible under the community caretaker doctrine. On appeal the government has conceded that the community caretaker doctrine is inapplicable to the facts in this case.[1] Instead, the government argues that Officer Cyr was justified in opening the bag under the rationale of *Terry v. Ohio,* 392 U.S. 1 (1968).

In *Terry*, the Supreme Court held that during an investigatory stop police officers were entitled to make a limited search for weapons that might be used to harm them when they have a reasonable, articulable suspicion of danger. 392 U.S. at 24. This rationale is not necessarily limited to a frisk of the person under investigation. *See Michigan v. Long*, 463 U.S. 1032, 1047 (1983) ("*Terry* need not be read as restricting the preventative search to the person of the detained suspect.").

If the police detect a weapon or contraband during a *Terry* search, they are entitled to seize it. This is true whether the *Terry* search is a simple frisk or a limited search beyond the person of the suspect. *See Long*, 463 U.S. at 1050 (noting that the Fourth Amendment does not require an officer to ignore contraband discovered during a *Terry* search of a car); *Minnesota v. Dickerson*,

---

[1] In *United States v. Bute*, this court expressly held that "the community caretaking exception to the warrant requirement is applicable only in cases involving automobile searches." 43 F.3d 531, 535 (10th Cir. 1994).

508 U.S. 366, 375-76 (1993). In *Dickerson*, the Supreme Court analyzed the justification for such a seizure by analogizing to the plain view doctrine:

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.

*Id.* The Supreme Court concluded that a "plain feel" exception to the warrant requirement would justify the seizure of contraband detected during a pat down because the officer knew the nature of the item.[2] Thus, upon detection of a weapon or contraband the officer may reach into a pocket and seize the item. *Id.* A similar analysis justifies Officer Cyr's seizure of the gun in this case. Officer Cyr only opened the bag after his *Terry* stop investigation revealed that it contained a weapon. Such an action was reasonable under the circumstances.

Thomson concedes that the police had a reasonable articulable suspicion sufficient to justify the initial encounter with him and the pat down of his person. Likewise, Thomson does not object to Officer Cyr's questions concerning the weapon. Instead, Thomson argues that allowing Cyr to open the bag and seize the weapon under these circumstances would impermissibly extend *Terry* to allow a

---

[2] In *Dickerson* the contraband seized was suppressed because the police officer exceeded the scope of a permissible *Terry* pat down. *Minnesota v. Dickerson*, 508 U.S. 366, 377-78 (1993).

search of any container in the vicinity of the person being questioned.  We disagree.

In this case, Officer Cyr both knew that the bag contained a weapon and had a reasonable articulable suspicion that Thomson was dangerous.  His knowledge that the handgun was in the bag resulted not only from the statements of two witnesses, but also from Thomson's acknowledgment that the bag contained a handgun.  Furthermore, Cyr had information indicating that Thomson had made repeated threats against his coworkers and his behavior that day caused the other employees to lock themselves in an office.  Allowing Officer Cyr to open the bag under these circumstances does not authorize a broader search.  Indeed, in this case Officer Cyr did not conduct a general search of Thomson's desk drawers or Thomson's office.  Instead, his actions were "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20.  In opening the bag, Cyr's actions were limited to what was needed to seize the weapon discovered during his investigation of a potentially dangerous suspect.  Accordingly, we conclude that removing the weapon from the bag was permissible under the Fourth Amendment.

## B.    The Continued Seizure of the Handgun

Allowing Officer Cyr to control the weapon for the duration of the encounter with Thomson does not mean that Cyr was entitled to retain the weapon

indefinitely. It is, however, "well established that under certain circumstances the police may seize evidence in plain view without a warrant." *Arizona v. Hicks*, 480 U.S. 321, 326 (1987) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971)). Police are entitled to seize items that they have probable cause to believe are evidence of a crime. *See United States v. Falcon*, 766 F.2d 1469, 1475 (10th Cir. 1985).

In this case, Officer Cyr had probable cause to believe that the handgun found in the bag was evidence of a crime. Officer Cyr was summoned to Alcatel because Thomson's co-workers were frightened by his activities. Two witnesses described three separate threats made by Thomson. Hutchinson described an incident on the day of Cyr's investigation in which Thomson had said "this place is going to burn," and mentioned a "firestorm." An earlier statement made by Thomson suggested a specific threat to shoot his co-workers. Thomson's handgun would have allowed him to carry out such a threat. In addition, Thomson had a basis to be antagonistic to his co-workers because he had recently been terminated. Finally, Cyr observed that the other employees were sufficiently frightened of Thomson to lock themselves in an office. Thus, the weapon was relevant to Thomson's intent to intimidate others or to actually carry out his threats. These circumstances were sufficient to give Cyr probable cause to seize

the weapon as potential evidence of a violation of Utah Code Ann. § 76-5-107, Terroristic Threats.[3]

Officer Cyr's failure to immediately realize he had probable cause to arrest Thomson does not undermine our conclusion. First, the determination of whether or not there is probable cause to arrest is separate from the determination of whether there is probable cause to believe an item is evidence of a crime. Second, an officer's subjective belief as to the existence of probable cause is not determinative because we measure probable cause against an objective standard. *United States v. Davis*, 197 F.3d 1048, 1051 (10th Cir. 1999). As explained above there was an objectively sufficient basis to believe that the handgun was evidence of a crime. Accordingly, the continued seizure was proper.

## IV. Conclusion

As we described above, Cyr's initial search of the bag was justified by the circumstances and the subsequent seizure of the weapon as evidence was supported by probable cause. Accordingly, we **affirm** the district court's denial of the motion to suppress, but for the reasons described above rather than those relied on by the district court. *United States v. Sandoval*, 29 F.3d 537, 542 n.6

---

[3] § 76-5-107 states in relevant part, "(1) A person commits a terroristic threat if he threatens to commit any offense involving bodily injury, death, or substantial property damage, and:. . . . (b) he acts with intent to: . . . (iii) place a person in fear of imminent serious bodily injury, substantial bodily injury, or death."

(10th Cir. 1994)(noting that the court of appeals may affirm a district court decision on any grounds sufficiently supported by the record).