FILED
United States Court of Appeals
Tenth Circuit

January 29, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

ALDEN HARMEN CHEE,

     Defendant - Appellant.

No. 07-4057

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 2:05-CR-773-TC)**

---

Karin Fojtik, Assistant United States Attorney (Brett L. Tolman, United States Attorney, on the brief), Salt Lake City, Utah, for Plaintiff - Appellee.

K. Andrew Fitzgerald of Fitzgerald & Fitzgerald, Moab, Utah, for Defendant - Appellant.

---

Before **KELLY**, **ANDERSON**, and **TYMKOVICH**, Circuit Judges.

---

**KELLY**, Circuit Judge.

Defendant-Appellant Alden Harmen Chee was convicted of one count of aggravated sexual abuse while within Indian country (count 3), 18 U.S.C. §§ 2241(a)(1) and 1153(a), and was sentenced to 253 months' imprisonment

followed by a life term of supervised release. He was acquitted of two other counts of aggravated sexual abuse. He appeals the district court's denial of his motion to suppress the oral and written confessions he made to police officers, and the sentence the district court imposed. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

## Background

Mr. Chee is a practicing Navajo "medicine man"—an individual who performs traditional healing ceremonies. IV Aplt. App. at 453. He performed services for Lindsay Perry at her home on the Navajo Indian reservation in Monument Valley, Utah, at the request of Ms. Perry's grandmother, Grace Cly. III Aplt. App. at 225; IV Aplt. App. at 455-56. Ms. Perry lives with her grandparents and her uncle, and Mr. Chee came to the home to perform ceremonies for Ms. Perry approximately three times over the course of at least three years. III Aplt. App. at 225-26; IV Aplt. App. at 455-56.

Ms. Perry is a 28 year-old woman with both mental and physical disabilities including seizures, partial paralysis on her right side, one leg that is shorter than the other, and a right hand that is weaker than her left. III Aplt. App. at 338-39, 341-43; Aplee. Br. at 7. In addition, she is moderately mentally retarded, having the mental capacity of a five year-old. III Aplt. App. at 341-42. She cannot cook or clean for herself and has problems with hygiene. Id. at 273-

74. Despite these limitations, however, Ms. Perry was frequently left alone and did not lock the door as she had been instructed. Id. at 227-29.

Ms. Cly asked Mr. Chee to perform ceremonies at her home to alleviate Ms. Perry's problems, and he did so on three separate occasions. III Aplt. App. at 230; IV Aplt. App. at 455-56. He was asked to perform a fourth ceremony on September 28, 2005. IV Aplt. App. at 454-56, 464, 489-90. That day, Mr. Chee entered the Cly residence through an unlocked door; no one was home except Ms. Perry. Id. at 459-60. Mr. Chee went to Ms. Perry's bedroom where she was sleeping and woke her up. III Aplt. App. at 231-33. He pulled down her pajama pants and underwear and took his own pants off. Id. at 233, 238. Mr. Chee then grabbed Ms. Perry's wrist and lifted up her leg—Ms. Perry tried to fight him with a stick, but Mr. Chee grabbed it. Id. at 234. He penetrated her but did not ejaculate. Id. at 238, 401. Mr. Chee then left the house. IV Aplt. App. at 462.

Later that evening, Ms. Perry described the incident to her grandfather, who confronted Mr. Chee when he returned to the house. III Aplt. App. at 300-02. Mr. Chee told Ms. Perry that he was sorry several times and immediately left. Id. at 302-03. He returned the next day and told Ms. Cly that he had awakened Ms. Perry the day before. Id. at 285-86. Ms. Perry's grandparents then reported the incident to the authorities. Id. at 287-88. Ms. Perry was examined by a medical professional who found several signs of trauma: bruising on her right wrist and inner thigh in addition to a scratch on the exterior of her genitalia and micro

abrasions inside her vagina. Id. at 363-67. Such micro abrasions are consistent with vaginal penetration. Id. at 367.

Special Agent Matt Larson of the Federal Bureau of Investigation sought an interview with Mr. Chee as the only suspect to the crime. I Aplt. App. at 90. He unsuccessfully tried to contact Mr. Chee at his residence, and then left a business card with Mr. Chee's daughter at her apartment, telling her that he wanted to speak to her father about a firearm Mr. Chee found in a car he had purchased at a government auction months before. Id. at 90, 103-05. Mr. Chee eventually called Agent Larson and they set-up an appointment at the Blanding Police Department for the following day, October 11, 2005. Id. at 90-91.

That morning, Mr. Chee arrived at the department on foot with his wife and was met by Agent Larson and Criminal Investigator Henry Lee, an investigator for the Navajo Nation Department of Public Safety. Id. at 92-93. Mr. Chee, Agent Larson, and Investigator Lee then went to Blanding Police Chief Mike Halliday's office, not a formal interview room, to talk. Id. Agent Larson told Mr. Chee's wife to stay outside. Id. at 129-30. Investigator Lee sat behind the desk, Agent Larson sat in a chair in front of the desk, and Mr. Chee sat in a chair positioned alongside the wall with the door. Id. at 94. Both Agent Larson and Investigator Lee were in plain clothes and did not have any firearms or handcuffs that were visible. Id. at 94, 101, 120. Mr. Chee was never handcuffed or restrained in any way during the course of the interview, but the door was closed.

Id. at 94-95, 113.

Agent Larson began the conversation by telling Mr. Chee that he was not under arrest, he was not in any trouble, he could leave if he wanted, and he did not have to talk. Id. at 96. He began questioning Mr. Chee about the firearm that Mr. Chee had found in his car months earlier. Id. at 97. Thereafter, Agent Larson asked him about the sexual assault on Ms. Perry. Id. Agent Larson told him that Ms. Perry's grandmother was very upset about what had happened, and Mr. Chee replied that he knew she was upset and had tried to apologize. Id. Agent Larson then asked Mr. Chee to tell him what happened, and Mr. Chee initially denied having sex with Ms. Perry. Id. at 98. After his denial, Agent Larson informed him that the police had obtained DNA evidence from the scene when, in fact, Agent Larson knew they had not. Id. Mr. Chee admitted at this point that he had sex with Ms. Perry against her will and, at Agent Larson's suggestion, agreed to write a letter of apology to Ms. Perry and her grandmother. Id. at 99. Mr. Chee wrote the letter for approximately ten minutes while Agent Larson made suggestions for what to include. Id. at 99-100, 111-12. No threats or promises of leniency were ever made. Id. at 101.

After he finished writing the letter, Agent Larson asked a few more questions and told Mr. Chee, after he inquired what would happen next, that other people would make that determination. Id. at 101-02. Agent Larson testified that the interview was conversational in tone and lasted less than an hour. Id. at 100-

01. On his way out, Mr. Chee was asked to give a DNA sample; he complied and left the station. Id. at 102.

The district court denied Mr. Chee's motion to suppress his oral and written confessions because they were obtained by the police in violation of his Fifth Amendment rights. Id. at 11, 55. The court rejected Mr. Chee's arguments that he was "in custody" under Miranda v. Arizona, 384 U.S. 436 (1966) and that his confessions and incriminating statements were involuntary. I Aplt. App. at 46. In sentencing Mr. Chee to 253 months' imprisonment, the district court began with a base offense level of 30, U.S.S.G. § 2A3.1, and added enhancements for the use of force, U.S.S.G. § 2A3.1(b)(1) (four levels), a vulnerable victim, U.S.S.G. § 3A1.1(b)(1) (two levels), and the abuse of a position of trust, U.S.S.G. § 3B1.3 (two levels). IV Aplt. App. at 545-47. This resulted in a total offense level of 38, with a criminal history category of I (Mr. Chee had no criminal history points). II Aplt. App. at 172-73. The sentence fell within the middle of the recommended sentencing range of 235-293 months. Id. at 172; IV Aplt. App. at 560. The district court rejected a downward departure from the guidelines based upon Mr. Chee's alleged diminished capacity at the time of the crime. IV Aplt. App. at 559-60.

Discussion

On appeal, Mr. Chee argues that the district court (1) erred in denying his

motion to suppress on the basis that he was not "in custody" and in determining that his oral and written confessions were voluntarily made,[1] (2) did not make adequate findings as to whether Mr. Chee had "an extraordinary physical impairment" due to his age and mental disabilities that would warrant a downward departure from the sentencing guidelines, and (3) incorrectly applied sentencing enhancements for the use of force, a vulnerable victim, and the abuse of a position of trust.

I.      Miranda

We first address whether Mr. Chee's oral and written confessions were obtained in violation of his Fifth Amendment rights articulated in <u>Miranda</u>.  We review the district court's denial of Mr. Chee's motion to suppress and whether Mr. Chee was "in custody" for <u>Miranda</u> purposes de novo.  <u>See</u> <u>United States v. Thomson</u>, 354 F.3d 1197, 1199-1200 (10th Cir. 2003); <u>United States v. Erving L.</u>, 147 F.3d 1240, 1246 (10th Cir. 1998).  We accept the district court's factual findings unless they are clearly erroneous and view the evidence in the light most favorable to the government.  <u>Thomson</u>, 354 F.3d at 1199-1200.

The Supreme Court in <u>Miranda</u> held that any confession obtained during a

---

[1]     Although Mr. Chee mentions in his brief under "Statement of Issues Presented for Review" that he is challenging the district court's decision that his oral and written confessions were voluntary, Aplt. Br. at 2, he fails to develop this issue.  "[T]he court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues."  <u>Drake v. City of Fort Collins</u>, 927 F.2d 1156, 1159 (10th Cir. 1991) (citation omitted).  We do not consider issues not briefed.  <u>United States v. Kunzman</u>, 54 F.3d 1522, 1534 (10th Cir. 1995).

"custodial interrogation" may not be used by the prosecution against the defendant unless the prosecution demonstrates the use of procedural safeguards effective to secure the Fifth Amendment privilege against self-incrimination. See 384 U.S. at 444. Prior to questioning, the person being interrogated must be warned of his "Miranda rights," including his right to remain silent. See id. Miranda rights need only be given to a suspect at the moment that suspect is "in custody" and the questioning meets the legal definition of "interrogation." United States v. Perdue, 8 F.3d 1455, 1463 (10th Cir. 1993). As the government concedes that Mr. Chee was "interrogated" by Agent Larson and was never read his Miranda rights, Aplee. Br. at 16, we need only determine whether Mr. Chee was "in custody."

An individual is "in custody" of the authorities under Miranda if he is "deprived of his freedom of action in any significant way," 384 U.S. at 444, or his "freedom of action is curtailed to a 'degree associated with formal arrest.'" Perdue, 8 F.3d at 1463 (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam)). We therefore must determine whether "a reasonable [person] in the suspect's position would have understood [the] situation . . . as the functional equivalent of formal arrest." Berkemer v. McCarty, 468 U.S. 420, 442 (1984).

This is a fact-intensive inquiry focusing on the totality of the circumstances. United States v. Griffin, 7 F.3d 1512, 1518 (10th Cir. 1993).

Helpful to our analysis is whether the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will and the nature of the questioning, including whether the questioning is prolonged and accusatory. Id. In addition, we analyze whether the environment was "police dominated." Id. Indications of whether the police are in full control may include whether the suspect was separated from his family and isolated in a nonpublic questioning room, whether there was the threatening presence of several officers, whether there was any display of weapons or physical contact with the suspect, and whether the officer's language and tone indicated that compliance might be compelled. Id. at 1518-19.

The district court denied the motion to suppress with respect to Miranda because Mr. Chee was not "in custody" at the time he confessed. Aplt. App. at 54. Mr. Chee argues that he was "in custody" under Miranda once the topic of the interrogation moved from the firearm to the sexual assault and that, at a minimum, he should have received Miranda warnings once he orally confessed. Aplt. Br. at 23, 26-27. He argues that once the topic shifted, the interrogation became accusatory rather than investigatory and a reasonable person would not have felt free to leave. Id. at 23-24. His oral and written confessions, he contends, therefore should have been suppressed by the district court. Id. at 27.

We are unpersuaded. The Supreme Court addressed a very similar factual situation in Oregon v. Mathiason, 429 U.S. 492 (1977) (per curiam) and reached

the same conclusion that we reach. In <u>Mathiason</u>, an officer was investigating a burglary and suspected that the defendant might have been involved. <u>Id.</u> at 493. After attempting to contact the defendant three or four times, the officer left his card at the defendant's apartment with a note to call him to "discuss something." <u>Id.</u> The defendant then called and they set up a meeting at the state patrol office. <u>Id.</u> The officer met the defendant in a hallway at the appointed time and took him to an office, closing the door. <u>Id.</u> The officer then told the defendant that he was not under arrest. <u>Id.</u> Before advising the defendant of his <u>Miranda</u> rights, the officer began questioning the defendant about the burglary and falsely stated that the defendant's fingerprints had been found at the scene. <u>Id.</u> The defendant then confessed to the crime. <u>Id.</u> At the end of the half-hour interview, the officer told the defendant that he would refer the case to the district attorney and that the defendant was not under arrest. <u>Id.</u> at 494. The defendant then left the office. <u>Id.</u>

The defendant argued that his confession should have been suppressed because he was not advised of his <u>Miranda</u> rights before he gave it. <u>Id.</u> at 492. The Supreme Court held, however, that there was no <u>Miranda</u> violation because the defendant was not "in custody." <u>Id.</u> at 495. "He came voluntarily to the police station, where he was immediately informed that he was not under arrest. At the close of a 1/2-hour interview respondent did in fact leave the police station without hindrance. It is clear from these facts that [the defendant] was not in

custody 'or otherwise deprived of his freedom of action in any significant way.'" Id.; see Beheler, 463 U.S. at 1121 (per curiam) (holding that Miranda warnings are not required when "the suspect is not placed under arrest, voluntarily comes to the police station, and is allowed to leave unhindered by police after a brief interview").

Mr. Chee's contention that he had to be given Miranda warnings once the investigative process moved to the point where Agent Larson was trying to obtain a confession is simply incorrect. Mr. Chee's reliance on Escobedo v. Illinois, 378 U.S. 478, 492 (1964) is of little assistance. Escobedo was decided prior to Miranda and concerned the Sixth Amendment right to counsel. Id. at 479. The defendant in that case was denied a lawyer after repeatedly requesting one during an interrogation. Id. at 481. There is no evidence that Mr. Chee requested counsel at any time during the interrogation.

The fact that the interrogation moved from one topic to another topic that Mr. Chee did not expect does not change our conclusion. Although Mr. Chee was told by Officer Larson that he was not under arrest and was free to leave at the beginning of the interrogation—while he was still under the impression that the interrogation would only concern the firearm—the environment did not change once the topic shifted to the sexual assault. The district court was persuaded that the tone remained calm and conversational throughout the interrogation, even after Mr. Chee confessed. Aplt. App. at 51. "[N]o Supreme Court case supports

[the] contention that admission to a crime transforms an interview by the police into a custodial interrogation." Locke v. Cattell, 476 F.3d 46, 53 (1st Cir. 2007). Although interviews taking place at the police department are more likely to be "police-dominated," see United States v. Ollie, 442 F.3d 1135, 1139 (8th Cir. 2006), the mere fact that Mr. Chee was questioned by himself in a nonpublic office at the police department after his wife was asked to remain outside does not transform this interview into a custodial interrogation. This is especially true given the duration of the interview (less than an hour) and the fact that Mr. Chee was told that he was free to leave and did leave thereafter. Viewing all of the circumstances, we conclude that a reasonable person in Mr. Chee's situation would not believe he was effectively under arrest and that Mr. Chee, therefore, was not "in custody" under Miranda. See 384 U.S. at 444; Berkemer, 468 U.S. at 442.

II.    Extraordinary Physical Impairment

We next consider whether the district court failed to make adequate findings with respect to whether Mr. Chee had an "extraordinary physical impairment" at the time of his sentencing that would justify a downward departure from the sentencing guidelines. United States v. Slater, 971 F.2d 626, 635 (10th Cir. 1992) (quotation omitted). Mr. Chee argues that the district court did not make adequate findings with respect to his age and physical condition under U.S.S.G. § 5H1.1 and U.S.S.G. § 5H1.4, respectively. Aplt. Br. at 28.

- 12 -

Alternatively, if this court finds that he did not raise this issue below, Mr. Chee argues that we should still review it because trial counsel's failure to raise the issue created an impediment to the district court's ability to address it, the result of which was manifest injustice. Id. at 31 n.1.[2]

We review compliance with the Federal Rules of Criminal Procedure de novo. United States v. Rodriguez-Delma, 456 F.3d 1246, 1253 (10th Cir. 2006). Rule 32(i)(3)(B) states that a sentencing court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." The district court "may accept any undisputed portion of the presentence report as a finding of fact." Fed. R. Crim. P. 32(i)(3)(A). "[T]o invoke the district court's Rule 32 fact-finding obligation, the defendant is required to make 'specific allegations' of factual inaccuracy." Rodriguez-Delma, 456 F.3d at 1253. An objection to the ultimate conclusions in the presentence report does not necessarily imply that a "controverted matter" exists. Id. Mr. Chee had "an affirmative duty to make a showing that the information in the [presentence report] was unreliable and articulate the reasons why the facts contained therein

---

[2] Although Mr. Chee alludes to the "plain error" exception to the rule that objections not raised below will not be reviewed on appeal, he argues that trial counsel's failure to explicitly reference U.S.S.G. § 5H1.1 and U.S.S.G. § 5H1.4 served as an impediment "in the district court's failure to address them, necessarily resulting in a manifest injustice." Aplt. Br. at 31 n.1.

were untrue or inaccurate." Id. at 1254 (quoting United States v. Terry, 916 F.2d 157, 162 (4th Cir. 1990)) (internal edit omitted).

In this case, after a careful review of the record, we believe that the issue was not raised before the district court. Mr. Chee's trial counsel did request a departure from the sentencing guidelines for diminished capacity at the time of the crime under U.S.S.G. § 5K2.13, both in her written objections to the presentence report and at the sentencing hearing.[3] I Aplt. App. at 69; IV Aplt. App. at 550. This was the sole focus of Mr. Chee's trial counsel's argument for a downward departure, and U.S.S.G. § 5H1.1 and U.S.S.G. § 5H1.4 were never mentioned. IV Aplt. App. at 547-59. Mr. Chee's trial counsel made two scattered statements at the sentencing hearing about how "anything more than five or six years is likely going to be a life in prison sentence" for Mr. Chee and that he is "physically compromised" and "mentally compromised," id. at 550-51, but these alone do not constitute "specific allegations" of factual inaccuracy in the presentence report necessary "to invoke the district court's Rule 32 fact-finding obligation." Rodriguez-Delma, 456 F.3d at 1253. Mr. Chee's argument under U.S.S.G. § 5H1.1 and U.S.S.G. § 5H1.4 was simply not raised below. Moreover, the district court felt no need to resolve this issue: "Whatever is going on, and I've read the reports, with Mr. Chee now, I don't know that that would be

_____

[3] Mr. Chee is represented by different counsel on appeal. Aplt. Br. at 31 n.1.

diminished capacity now." IV Aplt. App. 559.  A reduced sentence based on these grounds, whether a departure or a variance, would have required factual findings by the district court.  In these circumstances, "we consider the issue waived and will not find plain error."[4]  United States v. Overholt, 307 F.3d 1231, 1253 (10th Cir. 2002).

Mr. Chee further argues that if we find that the issue was not raised, we should still review it on appeal under our precedent because the trial counsel's ambiguous argument impeded the trial court from addressing the issue.  Aplt. Br. at 31 n.1.  This argument misses the point.  "Issues not raised in the district court will not be considered for the first time on appeal when . . . 'there is no showing of an impediment to the appellant that precluded his raising the issue.'"  United States v. Lotspeich, 796 F.2d 1268, 1271 (10th Cir. 1986) (quoting United States v. Mitchell, 783 F.2d 971, 995 (10th Cir. 1986)).  The question is not whether the trial court was impeded, but whether Mr. Chee was, and he presents nothing "that precluded his raising the issue." Id.  We therefore refuse to address Mr. Chee's argument with respect to U.S.S.G. § 5H1.1 and U.S.S.G. § 5H1.4.

III.    Sentencing Enhancements

Finally, we consider the district court's application of sentencing enhancements.  The district court, in calculating the applicable sentencing

---

[4]  Mr. Chee may raise this issue in a 28 U.S.C. § 2255 motion, but we simply lack the facts to assess it here.

guideline range, enhanced Mr. Chee's base offense level for the use of force during the sexual assault, U.S.S.G. § 2A3.1, for a vulnerable victim under, U.S.S.G. § 3A1.1, and for abusing his position as a medicine man, a position of trust under the district court's interpretation of U.S.S.G. § 3B1.3.

"Even after [United States v.] Booker[, 543 U.S. 220 (2005)], when reviewing a district court's application of the Sentencing Guidelines, we review legal questions de novo and we review any factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts." United States v. Wolfe, 435 F.3d 1289, 1295 (10th Cir. 2006) (internal quotation, brackets, and emphasis omitted). On appeal, we now review sentences for "reasonableness," which has both substantive and procedural components. United States v. Cage, 451 F.3d 585, 591 (10th Cir. 2006). "In setting a procedurally reasonable sentence, a district court must calculate the proper advisory Guidelines range and apply the factors set forth in [18 U.S.C.] § 3553(a)." United States v. Atencio, 476 F.3d 1099, 1102 (10th Cir. 2007).

A.    Use of Force

Mr. Chee argues that the district court incorrectly added four points to his offense level in calculating the applicable guidelines range for Criminal Sexual Abuse under U.S.S.G. § 2A3.1. Aplt. Br. at 34. That provision states that "[i]f the offense involved conduct described in 18 U.S.C. § 2241(a) or (b), increase by 4 levels." U.S.S.G. § 2A3.1(b)(1). Mr. Chee states that because he was convicted

under 18 U.S.C. § 2241(a) for Aggravated Sexual Abuse, his sentence cannot be enhanced for the "use of force" under that provision because such force was necessary to be convicted of the crime. Aplt. Br. at 35. Further, he argues, there was no threat of death, serious bodily injury, or kidnapping under 18 U.S.C. § 2241(a) that would justify an enhancement. Id. at 35-36.

We disagree. The base offense level of 30 mandated by U.S.S.G. § 2A3.1(a) applies to "Sexual Abuse" under 18 U.S.C. § 2242 as well as to "Aggravated Sexual Abuse" under 18 U.S.C. § 2241. The degree of force necessary to violate § 2241 warrants the four-level enhancement under § 2A3.1(b)(1). U.S.S.G. § 2A3.1 cmt. n.2; United States v. Holly, 488 F.3d 1298, 1302 (10th Cir. 2007). Moreover, all that is required is that the defendant restrain the victim such that the victim could not escape the sexual contact. United States v. Reyes Pena, 216 F.3d 1204, 1211 (10th Cir. 2000). Therefore the district court correctly enhanced his offense level by four points.

B.      Vulnerable Victim

Mr. Chee next argues that the district court erred when it enhanced his sentence under U.S.S.G. § 3A1.1(b)(1), which states that "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim, increase by 2 levels." Aplt. Br. at 36. Mr. Chee makes no argument that he did not know that Ms. Perry was vulnerable. He does contend, however, that the facts that Ms. Perry has the mental capacity of a five year-old and needs assistance

with some daily tasks alone should not designate her as a vulnerable victim.  Id. at 37.  Ms. Perry was impermissibly "classified," Mr. Chee argues, without "further analysis."  Id. at 38.

"We review the district court's identification of unusually vulnerable victims for clear error."  United States v. Caballero, 277 F.3d 1235, 1250 (10th Cir. 2002).  "Thus, we will not reverse the district court unless the court's finding was without factual support in the record, or if after reviewing all the evidence we are left with the definite and firm conviction that a mistake has been made."  United States v. Beaulieu, 893 F.2d 1177, 1182 (10th Cir. 1990).  "The Guidelines' enhancement . . . is reserved for exceptional cases in which the victim is unusually vulnerable or particularly susceptible to the crime committed."  United States v. Proffit, 304 F.3d 1001, 1007 (10th Cir. 2002) (emphasis in original).  "'Vulnerable victims' are individuals unable to protect themselves who therefore require greater societal protection.  Membership in a class of individuals considered more vulnerable than the average individual is insufficient standing alone."  Id. (citations omitted).

We hold that it was not clear error for the district court to determine that Ms. Perry was a vulnerable victim.  The record is clear that Ms. Perry suffers from mental and physical handicaps, including a diminished mental capacity, seizures, and partial paralysis.  III Aplt. App. at 338-39, 341-42.  We can think of few persons more in need of "greater societal protection."  Proffit, 304 F.3d at

1007. The district judge clearly considered Ms. Perry's disabilities when she concluded "that the evidence was extraordinarily clear that the victim was very vulnerable physically and mentally . . . and she was childlike and disabled," IV Aplt. App. at 546-47, setting forth enough to satisfy us "that [she] has considered the parties' arguments and has a reasoned basis for exercising [her] own legal decisionmaking authority." Rita v. United States, 127 S. Ct. 2456, 2468 (2007). Ms. Perry's unique attributes—including the fact that she has the mental abilities of a five year-old and is partially paralyzed—place her beyond merely the realm of "a class of individuals considered more vulnerable than the average individual."[5] Proffit, 304 F.3d at 1007. The addition of two offense levels for a vulnerable victim under U.S.S.G. § 3A1.1(b)(1) was therefore appropriate in this case.

C.    Position of Trust

Finally, we consider Mr. Chee's contention that the district court erred when it increased his offense level by two levels for the abuse of a position of trust under U.S.S.G. § 3B.1.3. Aplt. Br. at 38. Mr. Chee argues that there was no evidence that he took advantage of his position as a medicine man in committing

---

[5] Ms. Perry's disabilities make her different than the types of victims we have held were inappropriately "classified" as vulnerable by district courts under U.S.S.G. § 3A1.1. See United States v. Tissnolthtos, 115 F.3d 759, 761-62 (10th Cir. 1997) (seventy-one year-old victim was not vulnerable based on age alone); United States v. Creech, 913 F.2d 780, 781-82 (10th Cir. 1990) (newlyweds as a class are not vulnerable victims).

the crime or that he was in a position of trust in relation to Ms. Perry. Id. at 40-41. The district court, he asserts, impermissibly considered the testimony of others and not of Ms. Perry in concluding that Mr. Chee was in a position of trust. Id. at 41.

We review the factual matter of whether a defendant occupied a position of trust under U.S.S.G. § 3B1.3 for clear error. United States v. Edwards, 325 F.3d 1184, 1185 (10th Cir. 2003). Section 3B1.3 states that "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels." "To invoke § 3B1.3, the defendant must either occupy a formal position of trust or must create sufficient indicia that he occupies such a position of trust that he should be held accountable as if he did occupy such a position." United States v. Trammell, 133 F.3d 1343, 1355 (10th Cir. 1998) (quoting United States v. Queen, 4 F.3d 925, 929 n.3 (10th Cir. 1993)). "The primary concern of § 3B1.3 is to penalize defendants who take advantage of a position that provides them freedom to commit or conceal a difficult-to-detect wrong." United States v. Koehn, 74 F.3d 199, 201 (10th Cir. 1996). "The question of whether an individual occupied a position of trust is evaluated from the victim's perspective." Trammell, 133 F.3d at 1355.

The district court explicitly found that Mr. Chee had a special skill as a medicine man that allowed him to come and go within the house and that he had

been hired by Ms. Perry's family for that skill. IV Aplt. App. at 547. Mr. Chee was trusted by Ms. Perry and others because he was a medicine man who had been hired by Ms. Perry's grandmother for his healing arts. See id. According to the district court, "everyone trusted him." IV Aplt. App. at 547. Mr. Chee identified himself as "Grandpa Alden" when he entered Ms. Perry's room on the day of the incident, and Ms. Perry testified that Mr. Chee performed prayers and ceremonies at her house for her benefit. Id. at 461; III Aplt. App. at 230. Ms. Perry's grandmother asked Mr. Chee to perform these services and he was asked to perform a ceremony on the day of the incident. IV Aplt. App. at 454-55, 464, 489-90. Given the trust placed in Mr. Chee as a medicine man, his access to the victim when she was left home alone and the likelihood that he would not be suspected or detected was a function of this trust. See United States v. Roberts, 185 F.3d 1125, 1145 (10th Cir. 1999).

Mr. Chee did not deny that he was at the house with only Ms. Perry present at the time of the crime; rather, he tried to explain to Ms. Perry's family that he "got dropped off for coffee" there and that he "woke up" Ms. Perry, causing her to get mad at him. III Aplt. App. at 281, 287. These explanations were plausible only because Mr. Chee was a medicine man scheduled to perform a ceremony for Ms. Perry on that day. The family was initially comfortable, or at least was not suspicious, of the fact that he was in the house with only Ms. Perry because they were familiar with him as a medicine man. He knew that because of Ms. Perry's

mental disability and his position, the crime would be difficult to detect.  See

Koehn, 74 F.3d at 201.  It was therefore proper for the district court to apply the

"position of trust" enhancement here.  See U.S.S.G. § 3B1.3 cmt. n.1 ("[T]he

position of public or private trust must have contributed in some significant way

to facilitating the commission or concealment of the offense (e.g., by making the

detection of the offense or the defendant's responsibility for the offense more

difficult).").[6]

      AFFIRMED.

---

[6] We recognize that the example in U.S.S.G. § 3B1.3 cmt. n.1 of "criminal sexual abuse of a patient by a physician under the guise of an examination" is not the situation here.  Mr. Chee was not purporting to perform a medicine man ceremony when he sexually abused Ms. Perry.  Nonetheless, we think Mr. Chee's position as a medicine man is still one of "professional discretion" used to facilitate and conceal his offense contemplated as a "position of trust" under U.S.S.G. § 3B1.3 & cmt. n.1.