FILED
United States Court of Appeals
Tenth Circuit

May 19, 2010

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

PAUL CASEY KREHBIEL,

Defendant - Appellant.

No. 09-4170
(D. Ct. No. 2:08-CR-00604-TC-1)
(D. Utah.)

ORDER AND JUDGMENT[*]

Before **BRISCOE**, Chief Circuit Judge, **TACHA**, and **O'BRIEN**, Circuit Judges.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant-appellant Paul Casey Krehbiel appeals from the district court's order denying his motion to suppress statements he made during an encounter with law enforcement officers in a motel room. Mr. Krehbiel contends that he was subject to a custodial interrogation and was not informed of his rights under *Miranda v. Arizona*, 384

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

U.S. 436 (1966). We have jurisdiction under 28 U.S.C. § 1291, and we AFFIRM.

## I. DISCUSSION

The following facts, which are undisputed on appeal, are taken from the district court's order denying the motion to suppress.

On August 4, 2007, at approximately 9:00 p.m., Detective Brett Miller of the Taylorsville City Police Department was investigating a possible stolen vehicle incident at the Intown Suites in Midvale, Utah. Just as he arrived at the Intown Suites, Detective Miller saw two men walking away from a red Pontiac. The men crossed the driveway in front of Detective Miller's car, and he saw that they carried items that could be shotguns. One man carried a long, soft gun case and the other was carrying an object concealed under a blanket or sheet that had the shape of a shotgun. The men entered the Intown Suites.

Detective Miller decided to approach the men in the hotel and called the Midvale Police Department to ask for assistance. Sergeant Gregg Olsen and Officer Kresdon Bennett responded to his request. All three officers entered the hotel and spoke with an employee who told them that he believed the Pontiac was associated with the occupants of room 341.

The officers went to room 341. When they knocked on the door, Mr. Krehbiel answered. Detective Miller was in plainclothes, while the other officers were in uniform. Sergeant Olson had his gun out and pointed down when Mr. Krehbiel answered the door. When he saw that Mr. Krehbiel was not armed, he put the gun in its holster. Detective

Miller asked Mr. Krehbiel if he had been outside at the Pontiac and Mr. Krehbiel answered that he had. Detective Miller recognized Mr. Krehbiel as the individual carrying the object underneath the blanket or sheet. Mr. Krehbiel told Detective Miller that the other man he was with was not in the room.

When asked who was in the room, Mr. Krehbiel told the officers that a woman, who the room belonged to, and a child were in the room sleeping. Detective Miller again asked Mr. Krehbiel who was in the room and Mr. Krehbiel responded, "well, you can come in and check." Mr. Krehbiel opened the door and motioned the officers in with his hand.

The room was small, with a small entryway, a bathroom off the entryway, and two beds. The officers entered the room and stood with their backs to the door. The door swung shut behind them. Because of the number of officers and the size of the room, if Mr. Krehbiel had wished to leave the room one of the officers would have had to move to make way for him.

The officers could see a woman sleeping on one of the beds. Detective Miller asked Mr. Krehbiel where the guns were and Mr. Krehbiel pointed towards the other bed and said they were under the bed and "you can check them." Detective Miller looked under the bed and found a rifle and a shotgun. Detective Miller called dispatch to check the serial numbers of the guns to determine if they were stolen. The officers also saw a spent shotgun shell in a trash can in the entryway.

Mr. Krehbiel continued speaking with Sergeant Olson and Officer Bennett.

- 3 -

Officer Bennett asked Mr. Krehbiel when was the last time he had "used"; Mr. Krehbiel told him that it had been about a week. He told the officers that the other man they had seen by the Pontiac was Mike Emery and that Mr. Emery had recently been released from prison.

Detective Miller checked Mr. Krehbiel's criminal history with dispatch. This check turned up several warrants for Mr. Krehbiel's arrest. At this time, Mr. Krehbiel was put under arrest. Post-arrest, Mr. Krehbiel was given *Miranda* warnings and made further statements; those statements, however, are not relevant to this appeal.

Mr. Krehbiel was later charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Thereafter, he moved to suppress evidence of his pre-arrest incriminating statements. The district court denied the motion, concluding that Mr. Krehbiel was not in custody such that the officers were required to inform him of his *Miranda* rights:

> Mr. Krehbiel was not in custody before his formal arrest. Significantly, Mr. Krehbiel himself asked the officers into the hotel room. The questioning of Mr. Krehbiel was brief and the officers did not raise their voices nor is there any evidence that their questioning was hostile or aggressive. The court has considered the fact that Mr. Krehbiel was faced with three officers, two of whom were in uniform. Moreover, one of the officers had his weapon drawn when Mr. Krehbiel answered the door. The tone of the encounter was somewhat accusatory when Detective Miller told Mr. Krehbiel that he had seen him with guns and asked him where the guns were. But when all the factors are weighed, the court finds that Mr. Krehbiel was not in custody.

Mr. Krehbiel then pleaded guilty while reserving the right to appeal the denial of his motion to suppress.

## II. DISCUSSION

Statements obtained during a custodial interrogation may not be used against a defendant unless the government demonstrates that he was informed of certain rights mandated by the Supreme Court's decision in *Miranda*. *See United States v. Chee*, 514 F.3d 1106, 1112 (10th Cir. 2008). Accordingly, "two requirements must be met before *Miranda* is applicable; the suspect must be in 'custody,' and the questioning must meet the legal definition of 'interrogation.'" *See United States v. Perdue*, 8 F.3d 1455, 1463 (10th Cir. 1993). In this case, the only dispute on appeal is whether Mr. Krehbiel was in custody.

A person is in custody for purposes of *Miranda* when his "freedom of action is curtailed to a degree associated with formal arrest." *See id.* (quotations omitted). This is an objective question, focusing on whether, given the totality of the circumstances, "a reasonable [person] in the [defendant's] position would have understood [the] situation . . . as the functional equivalent of a formal arrest." *See Berkemer v. McCarty*, 468 U.S. 420, 442 (1984). We review de novo the district's determination of whether the defendant was in custody, but we give deference to the facts found by the district court to support that legal conclusion. *See United States v. Revels*, 510 F.3d 1269, 1273 (10th Cir. 2007).

Several factors are relevant to the custody determination, including whether the nature and length of the officers' questioning was accusatory or coercive and whether the police informed the defendant that he was free to decline to answer the officers' questions

or that he could end the interview. *See id.* at 1275. We also consider whether the circumstances demonstrated a police-dominated atmosphere, *see id.*, which turns on the following guideposts:

> [S]eparation of the suspect from family or colleagues who could offer moral support; isolation in nonpublic questioning rooms; threatening presence of several officers; display of a weapon by an officer; physical contact with the subject; and an officer's use of language or tone of voice in a manner implying that compliance with the request might be compelled.

*United States v. Jones*, 523 F.3d 1235, 1240 (10th Cir. 2008) (quoting *United States v. Griffin*, 7 F.3d 1512, 1518–19 (10th Cir. 1993)).

In this case, we agree with the district court that Mr. Krehbiel was not in custody. Mr. Krehbiel emphasizes that at least one officer had his gun drawn when he entered the motel room, the questioning was "accusatory," the officers were blocking the only exit, and the officers never told him that he was free to leave or that he did not have to answer their questions. But the officer only had his gun out and pointed down as he entered the room; it was not directed toward Mr. Krehbiel or anyone else, the officer holstered it when he saw that Mr. Krehbiel was unarmed, and the gun was not out or brandished when the officers began questioning him. And although Mr. Krehbiel contends that the officers took an accusatory tone when they asked him the last time he had "used," the totality of the questioning was not accusatory, forceful, or long. Indeed, the district court found that "[t]he questioning of Mr. Krehbiel was brief and the officers did not raise their voices nor is there any evidence that their questioning was hostile or aggressive." In addition, the evidence suggests that the fact the officers were blocking the exit to the room was simply

the result of the size and layout of the room rather than any show of authority or action on the part of the officers themselves, and the fact that Mr. Krehbiel invited the officers into the room in the first place counsels against a finding that he did not feel free to disregard the officers' questioning or to leave the room. We further note that the questioning took place in a motel room which Mr. Krehbiel had visited in the past; the site of the questioning was thus "neutral" and did not occur at an isolated, nonpublic space such as at the police department. *See Jones*, 523 F.3d at 1240; *see also United States v. Ritchie*, 35 F.3d 1447, 1485 (10th Cir. 1994) ("Courts are much less likely to find the circumstances custodial when the interrogation occurs in familiar or at least neutral surroundings") (alterations and quotations omitted). Finally, while the officers did not tell Mr. Krehbiel that he was free to decline to answer the officers' questions or that he could end the interview, we do not find this single fact dispositive given the totality of the circumstances. *See United States v. Rith*, 164 F.3d 1323, 1332 (10th Cir. 1999) (the fact that the individual was not told that he did not have to answer the officers' questions is insufficient to overcome other facts indicating that a reasonable person would have felt free to leave); *see also Jones*, 523 F.3d at 1240 ("[W]e must look to the totality of the circumstances and consider the police-citizen encounter as a whole, rather than picking some facts and ignoring others.").

We conclude that a reasonable person in Mr. Krehbiel's position would not have understood the motel room encounter as the functional equivalent of a formal arrest. Accordingly, Mr. Krehbiel was not in custody, and the officers were not required to

inform him of his *Miranda* rights.

## II.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge