**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 4, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

TIMOTHY SHAUN STEMPLE,

  Petitioner - Appellant,

v.

RANDALL G. WORKMAN, Warden,
Oklahoma State Penitentiary,

  Respondent - Appellee.

No. 09-5097
(D. Ct. No. 01-CV-166-GKF-PJC)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, Circuit Judge, **TACHA**, Senior Circuit Judge, and **HOLMES**, Circuit Judge.

Timothy Shaun Stemple was sentenced to death upon his conviction for the murder of his wife. After his conviction and sentence were affirmed on appeal, Mr. Stemple petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court denied his petition but granted a certificate of appealability on two issues involving the admission of evidence at trial. We take jurisdiction pursuant to 28 U.S.C. § 1291 and § 2253(c) and AFFIRM.

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I. BACKGROUND

The following facts, which are not disputed here, are taken from the opinion of the Oklahoma Court of Criminal Appeals ("OCCA") resolving Mr. Stemple's direct appeal. *See Stemple v. State*, 994 P.2d 61 (Okla. Crim. App. 2000). In October 1996, Mrs. Stemple's body was found near Highway 75 in Tulsa County, Oklahoma. Her death was briefly investigated as a hit-and-run accident, but as the investigation progressed, the Tulsa Police Department began to suspect that Mr. Stemple had orchestrated the death of his wife. Mr. Stemple was ultimately charged in her death with First Degree Malice Aforethought Murder, Conspiracy to Commit First Degree Murder, and Attempted First Degree Murder.

At trial, the prosecution put forth evidence that Mr. Stemple was having an extra-marital affair with Dani Wood and that he concocted a plan to murder his wife and collect the proceeds of her life insurance policy. Sixteen year-old Terry Hunt, Mr. Stemple's co-defendant and Ms. Wood's cousin, testified that Mr. Stemple hired him to assist with the murder, promising to pay him $25,000 to $50,000 if they collected the insurance proceeds. Mr. Hunt further testified that he and Mr. Stemple killed Mrs. Stemple by beating her with a baseball bat wrapped in plastic wrap and running over her numerous times with Mr. Stemple's pickup truck.

Additionally, the prosecutor introduced a five-minute long videotape of an

interview Tulsa police officers conducted with Mr. Stemple prior to his arrest, during which Mr. Stemple stated that he knew "how ugly this looks for me," summarized the evidence which he believed the police would use against him, and eventually invoked his right to counsel. The prosecutor also introduced a handwritten jailhouse confession by Mr. Stemple; other jailhouse documents created by Mr. Stemple, including a witness list; and testimony from Mr. Stemple's fellow inmates that he had asked them to arrange the death of several witnesses, given them a copy of his confession, and sought their assistance in hiring people to coerce exculpatory statements from Mr. Hunt and Ms. Wood. Ultimately, the jury convicted Mr. Stemple on all three counts.

During the separate penalty-phase proceeding, the jury found the existence of two aggravating circumstances: (1) Mr. Stemple committed the murder for remuneration or the promise of remuneration; and (2) the murder was especially heinous, atrocious, or cruel. The jury therefore recommended that Mr. Stemple be sentenced to death on the murder conviction. The trial court sentenced him in accordance with the jury's recommendations.

On direct appeal, the OCCA affirmed Mr. Stemple's convictions and sentences for the murder and conspiracy charges but reversed his conviction for attempted murder. The United States Supreme Court denied his petition for a writ of certiorari. *Stemple v. Oklahoma*, 531 U.S. 905 (2000). Mr. Stemple did not file an application for post-conviction relief in state court.

On October 1, 2001, Mr. Stemple filed a petition for a writ of habeas corpus in the United States District Court of the Northern District of Oklahoma. The petition raised three grounds for relief: (1) the prosecution's failure to disclose substantial changes in Mr. Hunt's anticipated trial testimony; (2) the admission of Mr. Stemple's videotaped interview with police, along with the prosecutor's references to it to the jury; and (3) the admission of various jailhouse documents and inmate testimony. The district court denied Mr. Stemple's petition but granted him a certificate of appealability ("COA") on the second and third issues. Mr. Stemple now appeals pursuant to the grant of COA, as well as seeks a COA on the first issue.

## II. DISCUSSION

A.  Admission of the Videotaped Interview and Prosecutor's Related Statements

Mr. Stemple argues on appeal that the admission of his videotaped interview with Tulsa police, and the prosecutor's comments at trial regarding the interview, were unconstitutional because: (1) Mr. Stemple had invoked his Sixth Amendment right to counsel prior to making incriminating statements; and (2) they enabled the jury to consider the invocation of his right to counsel as substantive evidence of his guilt. The OCCA rejected this claim on the merits, holding that Mr. Stemple did not unequivocally invoke his right to counsel until the end of the tape, after which the officers immediately ceased questioning.

- 4 -

*Stemple*, 994 P.2d at 68–70.  Accordingly, under the Anti-terrorism and Effective Death Penalty Act of 1996, Mr. Stemple is entitled to federal habeas relief only if the OCCA's decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d)(1)–(2).

Pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), suspects must be informed of certain rights whenever they are interrogated in police custody, including the right to counsel.  When a suspect knowingly and intelligently waives his right to counsel after receiving the *Miranda* warnings, he may be questioned by law enforcement.  *Davis v. United States*, 512 U.S. 452, 457 (1994).  If, however, "a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation."  *Id.* at 457–58.  Nevertheless, "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel," police are not required to cease questioning.  *Id.* at 459.

As noted above, *Miranda* applies only when a suspect is "in custody."  *United States v. Chee*, 514 F.3d 1106, 1112 (10th Cir. 2008).  A suspect is in the

- 5 -

"custody" of police when he is "deprived of his freedom of action in any significant way or his freedom of action is curtailed to a degree associated with formal arrest." *Id.* (quotations and citations omitted). Stated another way, the question is whether, under the totality of the circumstances, "a reasonable person in the suspect's position would have understood the situation as the functional equivalent of formal arrest." *Id.* (quotations and alterations omitted).

In this case, the State contends that *Miranda* does not require suppression because Mr. Stemple was not in custody at the time of the interview. We agree and therefore conclude that the OCCA's decision was not contrary to clearly established federal law. This court has enumerated several factors which are relevant to the custody determination, including whether the nature and length of the officers' questioning was accusatory or coercive and whether the police informed the defendant that he was free to decline to answer the officers' questions or that he could end the interview. *See United States v. Revels*, 510 F.3d 1269, 1275 (10th Cir. 2007). In addition, we consider whether the circumstances demonstrated a police-dominated atmosphere, which turns on the following factors:

> [S]eparation of the suspect from family or colleagues who could offer moral support; isolation in nonpublic questioning rooms; threatening presence of several officers; display of a weapon by an officer; physical contact with the subject; and an officer's use of language or tone of voice in a manner implying that compliance with the request might be compelled.

*United States v. Jones*, 523 F.3d 1235, 1240 (10th Cir. 2008) (quoting *United States v. Griffin*, 7 F.3d 1512, 1518–19 (10th Cir. 1993)).

In this case, on the morning of the videotaped interview, Tulsa police officers arrived at Mr. Stemple's home and told him that he "needed to come with [them] to the Detective Division, downtown Tulsa." Mr. Stemple rode with the officers to the police station fifteen miles from his home. During the interview, two plain-clothes officers questioned him. The five-minute-long video begins with Detective Fred Parke introducing himself to Mr. Stemple and asking the other officer present for the case file. At this point, Detective Parke told Mr. Stemple, "You're not under arrest or charged with anything." Moments later, Mr. Stemple asked, "Am I being *Mirandized* and arrested?" to which Detective Parke responded, "You're not being arrested, no." Later, Mr. Stemple asked whether he could selectively answer some questions and not others, and was informed that he could. Detective Parke also clarified Mr. Stemple's rights for him and asked, "Under these circumstances do you want to speak to us or do you want to get an attorney or what do you want to do?" Moments later, Mr. Stemple asked whether he was going to be arrested and was again told, "We're not here to arrest you."

Mr. Stemple maintains that he was in police custody based on several facts: (1) the interview took place on the day of his wife's funeral; (2) police officers approached Mr. Stemple at his home and told him he "needed" to come with them to the station; and (3) he rode with the officers to the police station fifteen miles

- 7 -

from his home. The State points out that Mr. Stemple was told more than once that he was not under arrest and that he exhibited his comfort in leaving several minutes later when he terminated the interview and departed the police station.

We have carefully reviewed the record, including the videotaped interview, and conclude that Mr. Stemple was not in custody under the facts of this case. During the interview, officers repeatedly told Mr. Stemple that he was not under arrest. He was also asked, "Under these circumstances do you want to speak to us or do you want to get an attorney or what do you want to do?" The majority of the other recognized factors support the conclusion that Mr. Stemple was not in custody: there were only two plain-clothes officers involved in the interview; neither officer displayed a firearm or made any other show of authority; the officers made no physical contact with Mr. Stemple; and neither officer's language or tone of voice implied that Mr. Stemple was required to talk to them or remain at the police station. In total, the interview lasted under five minutes, during which Mr. Stemple did the vast majority of the talking. Under the totality of the circumstances, Mr. Stemple was not in police custody at the time of his interview. The mere fact that Mr. Stemple rode to the police station with police officers and was told that they "needed" to talk to him does not outweigh the officers' clear statements and the non-coercive environment in which Mr. Stemple was questioned. *See United States v. Ellison*, 791 F.2d 821, 823 (10th Cir. 1986) ("The fact that [the defendant] was driven to the United States Attorney's office

by a police officer [for questioning] did not affect his liberty to come and go as he pleased."). Nor do we find the fact that the interview took place on the day of his wife's funeral particularly instructive. Because Mr. Stemple was not in custody, the admission of the videotaped interview and the prosecutor's related statements did not violate *Miranda* and was not error.[1]

Finally, Mr. Stemple has failed to identify any portion of the prosecutor's closing argument which can reasonably be considered a comment on Mr. Stemple's invocation of his right to counsel; therefore, we do not address that aspect of his claim.

B.      Admission of Jailhouse Documents and Jailhouse Informants' Testimony

Mr. Stemple also alleges that the admission of the jailhouse documents and the testimony of jailhouse informants resulted in a fundamentally unfair trial in violation of the Fourteenth Amendment. Specifically, he contends that: (1) the written jailhouse confession was coerced and is therefore inadmissible; and (2)

---

[1]We note that even if we were to find that Mr. Stemple was in custody his claim would fail. The district court correctly ruled that Mr. Stemple's first two references to getting an attorney were not unequivocal invocations of his right to counsel. *See Davis*, 512 U.S. at 461–62 ("If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him."). Moreover, it was Mr. Stemple who reinitiated conversation with the officers after the first two references to an attorney, *see Edwards v. Arizona*, 451 U.S. 447, 484–85 (1981) ("[A suspect] is not subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused himself initiates further communication, exchanges, or conversations with the police*." (emphasis added)), and all interrogation ceased after he unequivocally invoked his right to counsel (i.e., his third reference to an attorney).

the testimony of the jailhouse informants is "preposterous" and it is "obscene for courts to allow a state to execute a citizen on the strength of jailhouse snitches." The district court found this claim unexhausted but denied the claim on the merits pursuant to 28 U.S.C. § 2254(b)(2).

Under 28 U.S.C. § 2254(b)(1)(A), a habeas corpus petition may not be granted unless the petitioner has exhausted his state court remedies regarding the claims in the petition. *See also Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006). "In order to exhaust his state remedies, a federal habeas petitioner must have first fairly presented the substance of his federal habeas claim to state courts." *Hawkins v. Mullin*, 291 F.3d 658, 668 (10th Cir. 2002). "'Fair presentation' means that the petitioner has raised the 'substance' of the federal claim in state court." *Bland*, 459 F.3d at 1011 (quoting *Picard v. Connor*, 404 U.S. 270, 278 (1971)).

Mr. Stemple's only argument to the OCCA on direct appeal concerning the jailhouse papers was that the documents were the protected thoughts of a client recorded for his attorney in preparation for trial and therefore inadmissible under the attorney-client privilege and work-product doctrine. Mr. Stemple did not address the jailhouse informants' testimony. Moreover, Mr. Stemple did not refer to or cite the Fourteenth Amendment, nor did he otherwise raise the substance of the claim he now asserts. Thus, he has failed to exhaust this claim.

Although the district court denied this claim on the merits, *see Moore v.*

- 10 -

*Schoeman*, 288 F.3d 1231, 1235 (10th Cir. 2002), we conclude it is procedurally barred. *See Cummings v. Sirmons*, 506 F.3d 1211, 1222–23 (10th Cir. 2007). If Mr. Stemple were to return to state court to exhaust this claim, the Oklahoma courts would determine the claim was procedurally barred under Oklahoma's Post-Conviction Procedure Act because he did not raise it on direct appeal. Okla. Stat. Ann. tit. 22, § 1089(C); *see also Cummings v. State*, 970 P.2d 188, 192 (Okla. Crim. App. 1998) (relying on § 1089(C) to deny claims for post-conviction relief which "could have been raised on direct appeal, but were not"). Moreover, we have previously held this procedural bar to be both independent and adequate. *See Sherrill v. Hargett*, 184 F.3d 1172, 1175 (10th Cir. 1999). Thus, our review is precluded unless Mr. Stemple "can demonstrate cause and prejudice or a fundamental miscarriage of justice." *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998) (citations omitted); *see also Cummings v. Sirmons*, 506 F.3d at 1223. Mr. Stemple has offered no argument, either before us or the district court, that either of these conditions pertains to his case. Accordingly, we conclude that his claim is procedurally barred and affirm the district court's denial of relief on this claim.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of Mr. Stemple's petition for a writ of habeas corpus. We DENY Mr. Stemple's motion

to expand COA.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Senior Circuit Judge